UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KOYO CORPORATION OF U.S.A., | ) | Case No.: 1:10 CV 2557 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) | |
| | ) | |
| COMERICA BANK, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Defendant Comerica Bank's ("Comerica") Motion to Dismiss Plaintiff Koyo Corporation of U.S.A.'s ("Koyo") Complaint in its entirety pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) (ECF No. 18). For the following reasons, the court grants in part and denies in part the Motion to Dismiss (ECF No. 18).

**I. FACTUAL AND PROCEDURAL HISTORY**

This case arises out of a purchase agreement between Koyo and Defendant Y.M.T. International, Inc. ("YMT"), and YMT's subsequent failure to perform on the contract as a result of an outstanding debt to its creditor.[1] Koyo is a South Carolina corporation registered to do business in the State of Ohio. (Am. Compl. ¶ 1, ECF No. 80.) YMT is a Michigan corporation registered to do business in the State of Ohio. (*Id.* ¶ 2.) Defendant Comerica is a Texas bank registered to do business in the State of Ohio. (*Id.* ¶ 3.) Koyo alleges the following in its Amended Complaint.

---

[1] As of the date of this Order, YMT has not served its answer to the Complaint. On April 7, 2011, Plaintiff filed its application for entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (ECF No. 52.)

**A. YMT's Default**

On September 8, 2009, Comerica declared YMT in default on a Note dated November 14, 2008 ("YMT Note"). (*Id.* ¶ 12.) YMT, Defendant Yamamoto, LLC, Defendant Tomoji Yamamoto, Defendant Tsunetaka Iio, and Tatsuhiko Sakai (collectively, the "Guarantors"), are the Guarantors of the YMT Note. (*Id.* ¶ 13.) Despite the default, Comerica was willing to forbear collecting the amount due on the YMT Note until January 1, 2010, provided that YMT and the Guarantors accepted the conditions set forth in a forbearance agreement ("Forbearance Agreement"), dated September 8, 2009. (*Id.* ¶¶ 14–15; *see also* Forbearance Agreement, Ex. B, ECF No. 80-2.) Under the Forbearance Agreement, YMT had to apply 100% of its cash inflows to the amount due on the Note and retain Defendant Amherst Capital Partners, LLC ("Amherst") as a consultant. (*Id.* ¶ 16.) Amherst employee, Defendant Kevin R. English, managed the YMT account. (*Id.* ¶ 23.) YMT further agreed, under the Forbearance Agreement, that if either Amherst or YMT terminated the consulting contract, YMT would be in default on its Note. (*Id.*) At the time the Forbearance Agreement was entered into, principal in the amount of $780,744.81 and interest in the amount of $470.88 were due to Comerica on the YMT Note. (*Id.* ¶ 17.)

On or about February 16, 2010, the parties extended the Forbearance Agreement so that payment became due on March 31, 2010 ("First Amendment"). (*Id.* ¶¶ 18–19.) At the time the First Amendment was entered into, principal in the amount of $129,337.99 and interest in the amount of $1,255.79 were due on the YMT Note. (*Id.* ¶ 20.) Koyo alleges that the reduction in the amounts owed was due to the application of all monies received from Koyo, and likely other YMT customers, to the outstanding debt. (*Id.* ¶ 22.) Further, Koyo alleged that from September 2009 to December 2009, Comerica loaned YMT money based on certain YMT accounting records so that YMT could

maintain the appearance that its business operations were proceeding as normal. (*Id.* ¶¶ 26–27.)

Koyo maintains that Amherst, through its agent English, managed YMT's accounts and directed YMT to make payments only to selected vendors, creditors, and subcreditors, so that YMT's revenue would go towards paying the YMT Note. (Id. at ¶¶ 23–25.) Koyo alleges that as a result of the terms of the Forbearance Agreement, Comerica and Amherst had exclusive control over YMT's operations. (*Id.* ¶¶ 31–33.)

### B. Koyo's Purchase Agreement With YMT

Around October 14, 2009, Koyo ordered from YMT a control box and fixture ("Control Box and Fixture"). (*Id.* ¶ 34.) The purchase agreement was comprised of two separate purchase orders; the amount due for the first was $98,760.00, and the amount due for the second was $63,057.00. (*Id.* ¶¶ 34–35, 37–38.) Koyo alleges that at the time of its order, it was not aware of the Forbearance Agreement between Comerica and YMT. (*Id.* ¶ 36.) On November 12, 2009, Koyo submitted a down payment to YMT in the amount of $47,926.35 for the Control Box and Fixture. (*Id.* ¶ 43.) Koyo alleges that after it submitted the down payment to YMT, Koyo and YMT agreed that Koyo would not pay the outstanding balance of $111,828.15 until YMT completed the Control Box and Fixture. (*Id.* ¶ 44.) On December 17 and 18, 2009, respectively, YMT sent Koyo two invoices for payment of the outstanding balance. (*Id.* ¶ 45.) Shortly thereafter, Koyo issued a check in the amount of the outstanding balance and inadvertently mailed the check to YMT instead of withholding payment as the parties had agreed. (*Id.* ¶¶ 47–50.) Koyo maintains that it did not intend to pay for the outstanding balance at this time as the Control Box and Fixture had yet to be completed. (*Id.* ¶ 49.) It further alleges that YMT has acknowledged that Koyo's payment of the Outstanding Balance was by mistake, and notified English of this error. (*Id.* ¶¶ 52–53.)

**C. Koyo's Efforts to Recover its Payment for the Outstanding Balance**

According to Koyo, Comerica and Amherst have refused to return to Koyo the check for the outstanding balance. (*Id.* ¶ 54.) Moreover, Koyo alleges that YMT and Comerica have not applied the funds towards the $122,000 that is currently owed to subcontractors working on the Control Box and Fixture. (*Id.* ¶ 56.) As a result of their failure to remit the funds to the subcontractors, the subcontractors are refusing to finish the Control Box and Fixture. (*Id.* ¶ 62.)

On February 26, 2010, Koyo sent a demand letter to Comerica demanding that Comerica return the payments made by Koyo to YMT for the purchase of the Control Box and Fixture. (*Id.* ¶ 63.) In the alternative, Koyo demanded that Comerica fulfill the purchase orders by paying the subcontractors the approximately $122,000.00 required to complete the Control Box and Fixture. (*Id.*) Koyo alleges that Comerica has refused to comply with either demand. (*Id.* ¶¶ 65–66.) Koyo alleges that Comerica's retention of its funds has assisted YMT in reducing its debt to Comerica by $159,754.50. (*Id.* ¶ 72.)

On November 9, 2010, Koyo filed the instant suit, asserting ten grounds for relief: (1) breach of contract against YMT, *id.* ¶¶ 85–89; (2) conversion against Comerica, *id.* ¶¶ 90–94; (3) unjust enrichment against YMT and Comerica, *id.* ¶¶ 95–98; (4) promissory estoppel against YMT, *id.* ¶¶ 99–104; (5) fraudulent concealment against YMT, Comerica, Amherst, English, and the Guarantors, *id.* ¶¶ 105–19; (6) fraud against YMT and the Guarantors, *id.* ¶¶ 120–30; (7) fraudulent inducement to contract against YMT and the Guarantors, *id.* ¶¶ 131–40; (8) tortious interference with contract against Comerica, Amherst, and English, *id.* ¶¶ 141–48; (9) civil conspiracy against YMT, Comerica, Amherst, English, and the Guarantors, *id.* ¶¶ 149–56; and (10) aiding and abetting against Comerica, Amherst, and English, *id.* ¶¶ 157–64. Koyo requests monetary damages, attorney fees and

costs, pre-judgment interest and post-judgment interest, and any other form of relief necessary to remedy its injury. (*Id.* 21–23, ¶¶ 1–11.)

On December 15, 2010, Defendant Comerica filed its Motion to Dismiss. (ECF No. 18.) Comerica moves to dismiss all Counts asserted against it pursuant to Fed. R. Civ. P. 12(b)(6), 9(b). Koyo filed its Opposition to Comerica's Motion to Dismiss on January 28, 2011. (ECF No. 28.) Comerica has since filed its Reply in Support of its Motion. (ECF No. 35.) For the following reasons, the court grants in part and denies in part Comerica's Motion to Dismiss.

## II. STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must determine the legal sufficiency of the plaintiff's claim. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). *See also*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (clarifying the legal standard for a Rule 12(b)(6) motion to dismiss); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009)(same).

In making this determination, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations within as true, and determine whether the complaint possesses "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.*

For this analysis, a court may look beyond the allegations contained in the complaint to exhibits attached to or otherwise incorporated in the complaint, all without converting a motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Ultimately, this determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

Pursuant to Fed. R. Civ. P. 9(b), "the party alleging fraudulent concealment must plead the circumstances giving rise to it with particularity." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). Under that heightened standard, "a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Comm. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993)).

### III. LEGAL ANALYSIS

#### A. Count II - Conversion against Comerica

Under Ohio law, conversion is the "wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. General Motors Corp.*, 551 N.E.2d 172, 175 (Ohio 1990). A plaintiff asserting a claim for conversion must sufficiently plead the following elements: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of the plaintiff's property rights; and (3) damages. *See Dice v. White Family Cos.*, 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007). Where conversion is premised on the unlawful retention of property, the plaintiff must sufficiently allege that (1) the plaintiff demanded

-5-

the return of the property from the possessor after the possessor exerted dominion over the property; and (2) that the possessor refused to deliver the property to its rightful owner. *Id.* The object of the demand is "to turn an otherwise lawful possession into an unlawful one, by reason of a refusal to comply with it, and thus to supply evidence of a conversion." *Fid. & Deposit Co. of Md. v. Farmers & Citizens Bank of Lancaster*, 52 N.E.2d 549, 550 (Ohio Ct. App. 1943) (quoting *Pease v. Smith*, 61 N.Y. 477 (N.Y. 1875). Further, where a claim for conversion is premised on the conversion of money, "the action will only lie if identification is possible and there is an obligation to deliver the specific money in question." *Dice*, 878 N.E.2d at 1109 (internal quotations omitted).

In its Motion to Dismiss, Comerica contends that Koyo's allegations fail to state a claim for three separate reasons. First, Comerica argues that a plaintiff who has parted with ownership of property cannot subsequently bring an action for conversion unless the plaintiff was induced by fraud to relinquish said property, and in this case, Comerica's conduct was not wrongful or fraudulent because it did not have a duty to disclose YMT's financial condition to Koyo. (Def.'s Mem. in Supp. 8, ECF No. 18.) Second, Comerica contends that its retention of Koyo's payments for the Control Box and Fixture was not wrongful as a matter of law in light of Comerica's contract with YMT. (*Id.* 9.) Comerica argues that Koyo in effect conceded this point in its Complaint by incorporating the agreement between YMT and Comerica. (*Id.* (citing Compl. ¶ 16).) Finally, Comerica maintains that because Koyo's claim is based on the conversion of money, the law requires that the money be capable of identification. (*Id.* 9–10.) Comerica asserts that Koyo cannot identify any specific cash that is the subject of its conversion claim, but rather refers only to a sum certain amount that it paid

to YMT. (*Id.* 10.)[2]

As a preliminary matter, the court finds that Koyo, by incorporating the Forbearance Agreement between Comerica and YMT into its Complaint, did not concede that Comerica was legally entitled to the YMT payment at issue in this case. That Comerica was entitled to cash inflows pursuant to its Forbearance Agreement does not mean that it was entitled to funds that Koyo claims belonged to it in light of YMT's failure to perform on its contract with Koyo. The conditions of the Forbearance Agreement between YMT and Comerica are a separate matter from Comerica's conduct with respect to Koyo.

However, the court agrees with Defendant that Plaintiff's conversion claim fails because it rests on allegations that Comerica owes Plaintiff a sum certain, and not that "the money involved is 'earmarked' or is specific money capable of identification, e.g., money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money." *Haul Trans. of Va., Inc. v. Morgan*, No. CA 14859, 1995 WL 328995, *4 (Ohio Ct. App. 2 Dist. June 2, 1995) (quoting *Gray v. Liberty Nat. Life Ins. Co.*, 623 So.2d 1156, 1160 (Ala. 1993); *see also NPF IV, Inc. v. Transitional Health Services*, 922 F. Supp. 77, 82 (S.D. Ohio 1996) ("An action for conversion also requires that the defendant have an obligation to deliver specific money as opposed to merely a certain sum of money."). Plaintiff argues that it can maintain its claim because the claim is "for the specifically identifiable Payments that Comerica converted, which Payments Koyo specifically earmarked for

---

[2] The court notes that in its Reply Memorandum in Support of its Motion to Dismiss (ECF No. 35), Defendant also raised an objection pursuant to Uniform Commercial Code, arguing that Comerica became a holder in due course pursuant to U.C.C. 3-302. In fairness to the Plaintiff, however, the court does not consider this argument as Plaintiff did not have an opportunity to respond.

the Control Box when it transmitted the Payments to YMT." (Pl.'s Mem. in Opp'n 14, ECF No. 28.) Plaintiff's argument, however, misses the mark–as between Comerica and Koyo, Plaintiff has failed to sufficiently allege that Comerica had "an obligation," through contract or in a fiduciary capacity, "to deliver the *specific money* in question." *Dice*, 878 N.E.2d at 1109 (emphasis). Rather, Plaintiff's allegations suggest that it would be made whole by mere payment of a sum certain—"damages in the amount of $159,754.50." (Am. Compl. ¶ 94) Consequently, the court dismisses Plaintiff's conversion claim.

### B. Count III - Unjust Enrichment against YMT and Comerica

To prevail on a claim for unjust enrichment claim, Koyo must show that: (1) it conferred a benefit to Comerica; (2) Comerica knew of such benefit; and (3) Comerica unjustly retained the benefit without compensating Koyo. *Res. Title Agency v. Morreale Real Estate Servs.*, 314 F.Supp. 2d 763, 771 (N.D. Ohio 2004) (citing *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298 (1984)); *see also*, *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (A plaintiff must show that the defendant possesses money or benefits which in justice and equity belong to another.).

Comerica contends that Koyo's unjust enrichment claim fails because under Ohio law, the benefit conferred to the defendant must be obtained by fraud, misrepresentation or bad faith, and in this case, the payment was not induced by such conduct on the part of Comerica. (Def.'s Mem. in Supp. 10–11.) Comerica argues that fraud, misrepresentation and bad faith are absent here because it had no legal duty to disclose YMT's financial condition to Koyo. (*Id.*) For its first argument, Comerica relies on *Firstar Bank, N.A. v. Prestige Motors, Inc.*, N. H-04-037, 2005 WL 2049174 (Ohio Ct. App. Aug. 26, 2005) wherein the Ohio Court of Appeals noted that the "conferral of the benefit must be the product of fraud, misrepresentation or bad faith by the party accepting and

retaining the benefit. "*Id.* at *2. In its Opposition, Koyo asserts that, under Ohio law, Comerica need not have acted improperly, "as unjust enrichment also results from a failure to make restitution where it is equitable to do so." (Pl.'s Memo in Opp'n 16 (quoting *Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F. Supp. 2d 763, 772 (N.D. Ohio 2004)). Comerica counters that Plaintiff's theory of recovery has been rejected by the Ohio Supreme Court, in *Cosby v. Cosby*, 773 N.E.2d 516 (Ohio 2002), wherein the court overruled a court of appeals' decision imposing a constructive trust upon the State Teachers Retirement System ("STRS") survivor benefits of a surviving spouse in favor of a former spouse who claimed entitlement based on an award of retirement benefits in a divorce decree. *Id.* at 517–18.

As an initial matter, the Ohio Supreme Court's decision in *Cosby* is inapposite. That case dealt with a conflict between a statutory mandate regarding the distribution of survivor benefits and the equitable remedy of constructive trust. The Court had no occasion to address the elements of a claim for an unjust enrichment claim. In this case, Defendants erroneously reads a fourth element into Ohio's standard for unjust enrichment, arguing that Plaintiff must also sufficiently allege fraud, misrepresentation or bad faith. While Defendant is correct that some Ohio Courts of Appeals have required litigants to establish some form of improper conduct as the basis for their unjust enrichment claim (Def.'s Reply 6, ECF No. 35), there is sufficient contrary authority such that the court does not predict that the Ohio Supreme Court would require this additional factor. *See*, *e.g.*, *Dixon v. Smith*, 695 N.E.2d 284, 290 (Ohio Ct. App. 1997) ("The doctrine of unjust enrichment has also been applied where one party has been enriched at the expense of another due to a mistake either of law or fact."); *Firestone Tire & Rubber Co. v. Cent. Nat'l Bank of Cleveland*, 112 N.E.2d 636 (1953).

As the Sixth Circuit has noted, "Ohio law contains no requirement that a party have acted improperly for an action based upon quasi-contract to succeed. . . . Passive retention of a benefit where such retention is 'unconscionable' is enough to trigger liability." *F.D.I.C. v. Jeff Miller Stables*, 573 F.3d 289, 295 (6th Cir. 2009); *see also Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 860–62 (6th Cir. 2002).

Accepting all the factual allegations as true, Koyo's Complaint sufficiently alleges a claim for unjust enrichment. Koyo alleges that Comerica has benefitted from "Koyo's inadvertent payment . . . because it received $111,828.15, which Koyo was not obligated to pay to either Comerica or YMT," (Am. Compl. ¶ 60); that Koyo informed Comerica of the inadvertent payment and demanded its return (*id.* ¶ 63–64); that Comerica refused to comply with the demand (*id.* at 65–66); and that as a result the subcontractors are refusing to finish work on the Control Box and Fixture. (*Id.* ¶ 62.) Koyo alleges that it suffered damages in the amount of $159,754.50 as "a direct and proximate result" of Comerica's conduct. (*Id.* ¶ 98.) Koyo alleges that under these circumstances, "Comerica's retention of this benefit would be unjust and inequitable." (*Id.* ¶ 97.) While the court does not decide whether or not Comerica's conduct was unjust under these circumstances, the court finds that Plaintiff has sufficiently plead a claim for unjust enrichment, and thus Comerica's Motion to Dismiss this claim is denied.[3]

---

[3]  After Comerica filed its Motion to Dismiss Koyo's Complaint (ECF No. 18) and Reply in support of its Motion (ECF No. 35), Comerica renewed arguments in favor of dismissing Koyo's unjust enrichment claim in its Motion to Dismiss Yamamoto Defendants' Cross Claim (ECF No. 56). The court takes note of these arguments, but, as Comerica concedes, finds that these arguments have no bearing on the Motion addressed in this Order. Comerica can raise these objections at the summary judgment stage.

## C. Count V- Fraudulent Concealment Against Comerica

For its fraudulent concealment claim, Koyo must show: (a) a representation, or where there is a duty to disclose, concealment of a fact; (b) which is material to the transaction at hand; (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (d) with the intent of misleading another into relying upon it; (e) justifiable reliance upon the representation or concealment; and (f) a resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio 1984). A party can be liable not only for its affirmative misrepresentations, but also for any material omissions if it has a duty to speak. *Schulman v. Wolske & Blue Co., L.P.A.*, 708 N.E.2d 753, 758 (Ohio Ct. App. 1998). A duty to disclose arises only in limited circumstances, such as where there is relationship in which "one party imposes confidence in the other because of that person's position, and the other party knows of this confidence." *Central States Stamping Co. v. Terminal Equip. Co., Inc.*, 727 F.2d 1405, 1409 (6th Cir. 1984) (interpreting Ohio law); *see also General Acquisition, Inc. v. Gencorp, Inc.*, 766 F. Supp. 1460, 1480 (N.D. Ohio 1990).

In this case, Comerica argues that Plaintiff's fraudulent concealment claim fails because "Koyo has not alleged any set of facts, such as a request for information regarding YMT's financial condition from Comerica or any relationship with Comerica, to establish a qualifying circumstance that might give rise to a duty to disclose YMT's financial condition to YMT's customer Koyo." (Def.'s Mem. in Supp. 7.) Further, Comerica argues that because Koyo fails to meet general pleading standards, it also fails to meet the heightened standard applicable to fraud claims pursuant to Rule 9(b). (*Id.*)

The court agrees with Comerica. Plaintiff cites *Cent. States Stamping Co. v. Lake Cnty. Nat'l Bank*, 727 F.2d 1405 (6th Cir. 1984), for support, but that case is distinguishable from the instant case.

-11-

In that case, Central States Stamping Company ("Central States") contracted with Terminal Equipment Company, Inc. ("Terminal") for the purchase of a "slitting line" machine. *Id.* at 1406. Before making the purchase, Central States asked Terminal about its financial stability and Terminal replied that it was working closely with a Lake County National Bank ("Bank") and that Central States should contact the Bank for additional information. *Id.* Central States contacted the Bank to seek assurances about Terminal's financial stability. *Id.* The Bank, in turn, made "positive" representations to Central States about Terminal's financial condition. *Id.* at 1407. Central States later discovered that Terminal was heavily indebted to the Bank, and that the Bank had assumed a supervisory role over Terminal's daily operations. *Id.* at 1406. Central States sued the Bank for fraudulent misrepresentation. *Id.* at 1408. The court addressed whether the Bank owed Central States a duty to disclose Terminal's insolvency, and found that it did so given its positive representations regarding Terminal's financial condition when it was aware of its true condition. *Id.* at 1409. In this case, Koyo does not allege any facts to suggest that it was in a relationship of confidence with Comerica. Koyo does allege that it was in a relationship of trust and confidence with YMT and the Guarantors. (Am. Compl. ¶ 107.) Further, Koyo does not allege that it requested information from Comerica regarding YMT's financial conditions, nor does it allege that it had any communication with Comerica during its transaction with YMT. Koyo argues that, under the Forbearance Agreement, Comerica was not an "arms-length" lender to YMT, but "assumed all control over YMT's business and operations, including directing its relationships with customers." (Pl.'s Mem. in Opp'n 8.) In *Central States*, however, it was not the supervisory role over the debtor-manufacturer that the court found dispositive, but rather the fact that the Bank "undertook to advise [plaintiff] with respect to Terminal's financial condition," which in turned triggered the "duty to disclose information . . . which would reasonably be considered material

to the decision . . . [plaintiff] was in the process of making." *Central States*, 727 F.2d at 1409.

Koyo also relies on *Escue v. Sequent, Inc.*, 2:09-cv-765, 2010 WL 3365933 (S.D. Ohio Aug. 24, 2010), a case in which the court denied corporate directors' motion to dismiss plaintiff shareholder's fraudulent inducement claim. Koyo's reliance on *Escue*, however, is misplaced. In *Escue*, a sole shareholder of an acquired corporation brought an action for fraudulent inducement against the directors of the acquiring corporation because of false statements and material omissions in the merger agreement. *Id.* at *1–*3. The defendants argued that no misrepresentations were made because they were not involved in the merger negotiations. *Id.* at *7. The court rejected this argument, finding that as officers of a closely held corporation, "the defendants presumably [had] a greater degree of knowledge and control over Sequent's operations than would the outside directors of a large corporation" when they ratified the agreement. *Id.* at *8. In this case, there are no factual allegations that would support the inference that Comerica ratified the purchase agreement between Koyo and YMT, or that Comerica made any representation to Koyo during the course of Koyo's transaction with YMT. Consequently, the court dismisses Koyo's fraudulent concealment claim against Comerica.

### D. Count VIII - Tortious Interference with Contract

For its tortious-interference-with-contract claim, Koyo must show: (1) the existence of a contract or employment relationship; (2) the defendant's knowledge of the contract or employment relationship; (3) the defendant's intentional procurement of the breach of the contract of termination of the employment relationship; (4) lack of justification; and (5) resulting damages. *Vistein v. Amer. Registry of Radiologic Tech.*, 342 F. App'x 113, 129 (citing *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863 (1995)). The Ohio Supreme Court has enumerated factors that a court should consider in determining whether the alleged wrongdoer's actions were justified or privileged:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Fred Siegel Co. v. Arter & Hadden*, 707 N.E.2d 853, 860 (Ohio 1999) (citing RESTATEMENT (SECOND) OF TORTS § 767 (1979)). Under Ohio law, plaintiff has the burden of proving lack of privilege. *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 742 (6th Cir. 1999).

Comerica argues that Koyo's claim fails as a matter of law because it is justified, as a creditor, to interfere with Koyo's contract with YMT. (Def.'s Mem. in Supp. 11–13.) Comerica contends that the law affords a creditor, like itself, a privilege to interfere with its debtor's contracts to further its legitimate business interests. (*Id.*); *see also Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.*, 862 F. 2d 597, 601 (6th Cir. 1998). Koyo responds that Comerica is not entitled to justification for its interference because Comerica's conduct was of a "knowing and deceitful nature" and that Comerica and the other Defendants worked together to take Koyo's payments "with full knowledge that those payments were for the furtherance of– and indeed critical to–Koyo's contract with YMT. (Pl.'s Mem. in Opp'n 19.)

While the court agrees with Defendants that the law affords the creditor a privilege to interfere with a contract in furtherance of its legitimate business interest, this privilege is not absolute. Ohio law affords a privilege where the party is "in good faith . . . asserting a legally protected interest of his own, which he believes will be impaired or destroyed by the performance of the contract." *Pearse v. McDonald's Sys. of Ohio, Inc.*, 351 N.E.2d 788, 791 (Ohio Ct. App. 1975). As such, the question of privilege is a context specific inquiry. *Brookeside Ambulance v. Walker Ambulance Serv.*, 678 N.E.2d 248, 252 (Ohio Ct. App. 1996). Thus, the fact that Comerica could collect certain payments from

-14-

YMT pursuant to the Forbearance Agreement is not dispositive at this juncture. In its Complaint, Koyo alleges that it apprised Comerica of Koyo's contract with YMT and the arrangement the parties had agreed to regarding payment. (Am. Compl. ¶ 63.) Further, it apprised Comerica that its failure to remit Koyo's payments to the subcontractors affected the completion of the Control Box and Fixture. (*Id.* ¶64.) Koyo further alleges that Comerica refused to cooperate with its demands despite having apprised Comerica of Koyo's interest in the funds. (*Id.* ¶¶ 65–66.) Koyo alleges that even though YMT had defaulted on its Note, Comerica "loaned money to YMT so that YMT would remain in operation for the sole purpose of collecting money from customers to pay its debt to Comerica." (*Id.* ¶ 28.) Taken together, the court finds these pleadings sufficiently allege a lack of privilege or justification and allow the court to draw a reasonable inference that Comerica's conduct in refusing to return funds Koyo claimed pursuant to a contract with YMT was improper. Thus, the court denies Defendant's Motion to Dismiss Koyo's tortious interference claim.

### E. Count IX - Civil Conspiracy

A civil conspiracy is "an agreement between two or more persons to injure another person by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989). In order to establish this claim, Koyo must allege: (1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d 809, 825 (S.D. Ohio 2007) (citing *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863 (Ohio 1995). The parties alleged to have conspired must act with malice such that they committed the wrongful act purposely, "without reasonable or lawful excuse." *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (internal quotation marks omitted). Koyo does not have to show that Defendants expressly agreed to

Case: 1:10-cv-02557-SO Doc #: 94 Filed: 09/29/11 17 of 20. PageID #: 725

the conspiracy, but must allege that there existed "a common understanding or design, even if tacit, to commit an unlawful act." *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996) (internal quotation marks omitted). To survive a motion to dismiss, a conspiracy claim "must be pled with some degree of specificity and [ ] vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Rosy Blue, NV v. Lane* 767 F. Supp. 2d 860, 868 (S.D. Ohio 2011) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.1987)). Comerica contends that Koyo has not sufficiently pled two of the four elements for civil conspiracy – malicious combination and unlawful act independent from the actual conspiracy. (Def.'s Mem. in Supp. 13-14.) While the court held above that Koyo's tortious interference with contract claim survives Comerica's Motion to Dismiss, and Koyo asserts this claim as an underlying unlawful act for its conspiracy claim (Pl.'s Mem. in Opp'n 20), the court finds that Koyo nevertheless fails to state a claim for civil conspiracy because it has not sufficiently alleged factual matter to support a conspiracy claim. Koyo has failed to make any specific allegations against Comerica that, if true, would show that Comerica engaged in a meeting, discussion or agreement to join in alleged wrongful conduct or a "malicious combination" with the other Defendants. Rather, Koyo's allegations concerning a conspiracy among the Defendants rest on mere "labels and conclusions." *Twombly*, 550 U.S. at 555. Consequently, this court grants Comerica's Motion to Dismiss Koyo's civil conspiracy claim.

### F. Count X - Aiding and Abetting

Under its tenth claim for relief, Koyo alleges that Comerica, along with Amherst and English, "assisted YMT in breaching its obligations and duties to Koyo by propping up YMT to make it appear that it was a solvent entity that was fulfilling orders from its customers, when in fact it was not." (Compl. ¶ 151.) Comerica argues that this claim can be dismissed on two separate bases. First,

-16-

Comerica argues that Ohio law does not recognize a claim for aiding and abetting fraud.[4] (Mem. in Supp. Mot. to Dismiss 14, ECF No. 18.)  The Sixth Circuit has noted the uncertainty as to whether Ohio law recognizes a claim for aiding and abetting common law fraud. *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 570 (6th Cir. 2006) ("It is unclear whether Ohio recognizes a common law cause of action for aiding and abetting tortious conduct."); *but see Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 533 (6th Cir. 2000) ("[W]e conclude that the Supreme Court of Ohio would recognize aiding and abetting liability if squarely faced with the issue.") Second, Comerica argues that even if aiding and abetting were a valid cause of action, Koyo's claim fails because its allegations arise from a breach of contract duties by YMT, and the underlying act must be a tort. (Def.'s Mem. 14.)

In *Pavlovich*, the Sixth Circuit affirmed this court's grant of the defendant's motion for summary judgment on all claims including the plaintiff's claim for aiding and abetting tortious conduct. 435 F.3d at 570–571. The *Pavlovich* court acknowledged the unsettled question of whether there is a civil aiding and abetting cause of action under Ohio law. *Id.* at 571.  However, the Pavlovich court did not resolve this uncertainty. Instead, the court concluded that even if Ohio law recognized a civil aiding-and-abetting claim, plaintiff had not proffered evidence to show a triable issue regarding the elements of the claim. *Id.* at 570–71 (quoting *Pavlovich v. Nat'l City Bank*, 342 F. Supp. 2d 718, 735–36 (N.D. Ohio 2004)). In making this determination, the Court applied the elements of § 876(b) of the Second Restatement of Torts, which "provides the basis for 'modern application of civil aiding and abetting' and requires two elements: '(1) knowledge that the primary party's conduct is a breach

---

[4]     Koyo labels Count X as simply "aiding and abetting" (see Compl. p. 20), although this court reads Count X as a claim for aiding and abetting in a civil tort.  Courts have used various labels for this claim including, "aiding and abetting fraud," see *Aetna*, 219 F.3d 519, "aiding and abetting for tortious conduct," *Pavlovich*, 435 F.3d 360. The court will use these labels interchangeably.

-17-

of duty and (2) substantial assistance or encouragement to the primary party in carrying out the tortious act.'" *Id.* at 570 (quoting *Aetna*, 219 F.3d at 532–33).

Assuming *arguendo* that aiding and abetting is a valid cause of action under Ohio law, Koyo's claim nevertheless fails because Koyo has failed to adequately allege that Comerica has provided substantial assistance or encouragement to YMT in furtherance of a tortious act. While Koyo asserted a claim of fraudulent concealment against YMT, which may serve as the principal's tortious act for the purposes of aiding and abetting, Koyo has failed to sufficiently allege active participation or knowing provision of substantial assistance by Comerica in furtherance of YMT's fraud. In particular, Koyo's Complaint is devoid of factual allegations from which the court can reasonably infer that Comerica was aware of YMT's allegedly fraudulent conduct with respect to Koyo and provided YMT with assistance and encouragement to perpetrate the alleged fraud against Koyo. Koyo pleads that Comerica was "aware of YMT's obligations and duties to Koyo" and that Comerica, along with Amherst and English, "assisted YMT in breaching its obligations and duties to Koyo." (Am. Compl. ¶¶ 158-161.) As the Supreme Court held in *Twombly*, however, a "recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While Koyo specifically pleads that "Comerica loaned money to YMT so that YMT would remain in operation for the sole purpose of collecting money from customers to pay its debt to Comerica" (Am. Compl. ¶ 28), the Complaint is devoid of factual allegations concerning specific conduct by Comerica in relation to specific transactions between YMT and its customers. For example, there are no factual allegations that would permit the court to infer that Comerica ratified YMT's representations to Koyo regarding their contract for the Control Box and Fixture. Accordingly, this court grants Comerica's Motion to Dismiss Koyo's aiding and abetting claim.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Defendant Comerica Bank's Motion to Dismiss. (ECF No. 18.) The court denies Comerica's Motion with respect to Plaintiff's claims for unjust enrichment (Count III) and tortious interference with contract (Count VIII), and grants it with respect to Plaintiff's claims for conversion (Count II), fraudulent concealment (Count V), civil conspiracy (Count IX), and aiding and abetting (Count X).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

September 29, 2011